Felix J. Aulisi, J.
This is an action to annul a marriage under section 1134 of the Civil Practice Act on the grounds that the defendant contracted a marriage to plaintiff while her former husband was then living. The defendant had concluded divorce proceedings against the said former husband, in New Jersey, in 1935, and the plaintiff now contests the validity of that divorce.
Defendant’s first marriage, contracted in Scotland, terminated with the death of her husband. She then came to America in 1927 and after a time, became domiciled in the State of New York. On January 10, 1929, defendant married one John Whitfield who was also domiciled in the State of New York. The marriage took place in Brooklyn, New York, and the parties to that marriage resided together in Brooklyn until defendant separated from Whitfield in early 1933 as a consequence of his cruel and abusive treatment. Defendant continued to live in Brooklyn for a short time and then established a residence of sorts in New Jersey in March, 1933.
Defendant’s petition for divorce against Whitfield was filed in Chancery of New Jersey on May 7,1935. He was personally served but did not appear or contest the action and the defendant was granted a decree nisi on July 3, 1935, and a decree absolute on October 4, 1935.
Defendant then married one deal, in Brooklyn, New York, on October 14, 1935, 10 days after the decree absolute and resided in New York State thereafter. After deal’s death, defendant married plaintiff in Cambridge, New York, on October 29, 1949. At the time of this marriage, defendant actively concealed the Whitfield marriage and divorce and represented all former husbands were dead and that no legal impediment existed as to her right to marry.
The said John Whitfield died on February 22, 1950, or four months after defendant’s marriage to plaintiff.
The question raised regarding this court’s power to hear this action was decided in Richards v. Richards (1 A D 2d 866). It was held that this court had jurisdiction of the action and that the questions raised with respect to the New Jersey decree were *598 evidentiary and to be determined by the trial court and not summarily.
Plaintiff’s right to bring a collateral attack on the New Jersey decree has been established by Cook v. Cook (342 U. S. 126) and Johnson v. Muelberger (340 U. S. 581). Plaintiff’s right to attack depends upon whether New Jersey would permit plaintiff to attack its decree collaterally in its courts.
On the trial, plaintiff produced as a witness, a counsellor at law o'f the State of New Jersey who specialized in the field of family law. He duly qualified as an expert witness and his uncontroverted testimony was to the effect that a collateral attack would be permitted in New Jersey when fraud had been practiced in the action under attack. (Catabene v. Wallner, 16 N. J. Super. 597.) The Catabene case approves the rule in section 11 of the Restatement of Judgments that a judgment which is void is subject to collateral attack both in the State in which it is rendered and in other States. That a void judgment may be attacked in the courts of New Jersey by one who is not a party has long been well settled in New Jersey courts. New Jersey imposes the requirement, however, that the one attacking it is not precluded by estoppel or unclean hands from raising the issue. (Meade v. Mueller, 139 N. J. Eq., 491; Judkins v. Judkins, 22 N. J. Super. 516; Shammas v. Shammas, 9 N. J. 321; Untermann v. Untermann, 35 N. J. Super. 367.) The New York view of a void marriage is otherwise. (Stokes v. Stokes, 198 N. Y. 301; Gough v. Gough, 111 N. Y. S. 2d 448; Villafana v. Villafana, 275 App, Div. 810.) In Anonymous v. Anonymous (186 Misc. 772, 776) the court said: “ Her second marriage being void, the doctrine of ‘ clean hands ’ has no application, nor may any phase of estoppel be invoked. The hardship or inequity of a particular situation must yield to the paramount public policy of the State ”,
However, this court is not faced with the problem of determining whether the New Jersey requirement that the attacking person be not precluded by estoppel is a requirement of its substantive or of its adjective law. This court does not pass on that point as plaintiff was clearly unaware of the circumstances at the time of his marriage to defendant, and although he did not part from defendant and cease to live and cohabit with her until March, 1954, some four and one-half years after the marriage, he did renounce the marriage as soon as he had grounds to question the validity of the New Jersey divorce and lived apart thereafter.
There remains the question of the validity of the New Jersey decree. The statutory authority under which Court of Chancery *599 of New Jersey may grant divorces has, since its enactment as chapter 216 of the Laws of 1907, and its re-enactment as Revised Statute 2:50-10 in 1937 and New Jersey Statute 2A :84-10 in 1951, never varied in its language. A two-year residence in New Jersey was required of defendant before she could bring the action and it was further required of her that she was a resident when the cause of action arose.
The cruel and abusive treatment complained of in her petition for divorce occurred in New York State; such facts do not constitute grounds for divorce in New York State. Whitfield and the defendant never lived together in New Jersey; Whitfield never resided anywhere but in New York State. Defendant never resided in New Jersey until after she broke with Whitfield; after the break she continued to live in New York and then proceeded to establish a New Jersey residence.
Furthermore, it is clear from defendant’s own admissions that her residence did not meet the requirements of the New Jersey statute. “ Residence ” has been construed by New Jersey courts to be synonymous with domicile. (Voss v. Voss, 5 N. J. 402.) I find the defendant did not intend to remain in New Jersey either permanently or indefinitely. By her own admissions, while waiting for her action to be heard in New Jersey, she had agreed to return to Brooklyn, marry deal (who was meeting the expenses of the New Jersey litigation) and settle there as soon as the divorce was granted. Defendant lived in a room in New Jersey in a private home; she went to New Jersey only when work was available there. She maintained a home in New York where she kept her clothing and in which her minor daughter lived. Defendant testified that she has always considered herself a resident of New York and regarded New York as her home. Years later, in 1942, on the occasion of her first vote, she swore before her local Board of Elections that she had resided in New York for the past 15 years, and in the county of Kings for the past 14 years. These periods excluded any possibility of a domicile elsewhere as she did not arrive in America until 1927. Lastly, she testified that she intended to return to New York “immediately” after the divorce and in fact did so. On very similar facts, as long ago as 1900, New Jersey held in McGean v. McGean (60 N. J. Eq. 21), that no domicile had been established. Under circumstances where the residence requirements of the statute have not been met, New Jersey would regard such judgment of divorce as “ utterly void for want of jurisdiction of the subject matter.” (Tonti v. Chadwick, 1 N. J. 531, 535.)
*600 I find the New Jersey decree of divorce invalid as being void under the laws of the State of New Jersey and the State of New York alike.
The parties however are both advanced in years. The plaintiff is now 80 years of age and the defendant, 70. They lived together for some four and one-half years. Defendant’s conduct notwithstanding, justice requires me to provide for her support. Power to make an award under these circumstances is vested in me by section 1140-a of the Civil Practice Act. Accordingly, I direct the plaintiff to pay to the defendant all unpaid installments for support accrued prior to May 19, 1956, the date of the trial of this action, and further to pay to the defendant the sum of $35 per week to commence on the 19th day of May, 1956 and to continue until the defendant remarries and to otherwise terminate upon the death of either the plaintiff or the defendant. The plaintiff is also directed to pay defendant’s attorney the sum of $200 as his final counsel fees in this matter.
The marriage of plaintiff to defendant is hereby declared void and is accordingly, annulled.
Enter decree accordingly.