**Thomas DAVIS, Plaintiff,**

v.

**UNITED AIR LINES, INC., Defendant.**

**No. 79 C 2542.**

United States District Court,
E.D. New York.

Nov. 30, 1983.

The Legal Aid Society, New York City, for plaintiff; James E. Francis IV, New York City, of counsel.

Moore, Berson, Lifflander & Mewhinney, New York City, for defendant; Michael R. Sonberg, New York City, of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Plaintiff, who has a physical disability, is suing his former employer claiming wrongful dismissal from his job, allegedly in violation of section 503 of the Rehabilitation Act of 1973 as amended. 29 U.S.C. § 793. He contends that the dismissal violated the contract between his employer and the federal government. The contract, as required by section 503, incorporated an affirmative action provision in favor of physically disabled workers. He claims standing to sue as a third-party beneficiary. Plaintiff also contends that the dismissal violated the collective bargaining agreement between his union and his employer; that agreement, it is claimed, incorporated by inference the affirmative action provision. For the reasons indicated below, defendant's motion to dismiss must be granted.

## I. FACTS

Starting in September 1966, the plaintiff was employed by United as a "ramp serviceman" at Kennedy Airport in New York. In 1969, he was first diagnosed as having epilepsy. United was aware of this diagnosis, as it was of the five seizures that plaintiff experienced from 1969 to 1974. From September 1974 to June 1977, United increasingly restricted plaintiff's employment. On June 6, 1977, plaintiff was placed involuntarily on permanent unpaid sick leave and in 1980, United terminated plaintiff's employment.

It is contended that the restrictions, suspension and dismissal were not justified, as United claims, by plaintiff's disability and that United's actions violated section 503 of the Rehabilitation Act. That section requires that all contracts over $2,500 made by the United States for property or services include a provision requiring the party contracting with the United States to take "affirmative action to employ ... qualified handicapped individuals." It also provides for an aggrieved handicapped individual to file a complaint with the Department of Labor and for the Department to take appropriate action if it finds a violation.

The plaintiff originally stated a cause of action directly under the statute. The Court of Appeals, however, held that no such private right of action exists. *Davis v. United Air Lines, Inc.*, 662 F.2d 120 (2d Cir.1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982) *criticized in* Comment, Closing the Courthouse Door on Section 503 Complaints, 49 Bklyn.L.Rev. 1159 (1983). An amended complaint is predicated on the view that plaintiff could sue as a third-party beneficiary of the statutorily mandated contract and for violation of the collective bargaining agreement.

## II. LAW

Section 503 provides in relevant part:
(a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals ...

(b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto. 29 U.S.C. § 793.

### A. *Third-Party Beneficiary Claim*

Although there is little New York law on point, it appears that New York courts would, in the case of a contract mandated by a federal statute, be guided by federal contract law in deciding a third-party beneficiary claim. *Filardo v. Foley Bros.*, 297 N.Y. 217, 225, 78 N.E.2d 480, 484, 79 N.Y.S.2d 217 (1948), *rev'd on other grounds*, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680 (1949). The question in *Filardo* was whether an employee could sue as a third-party beneficiary of a contract between his employer and the United States, which contract stated that the employer "agreed to 'obey and abide by all applicable laws ... of the United States.'" 297 N.Y. at 219, 78 N.E.2d 480, 79 N.Y.S.2d 217. The employee was suing for violation of the Federal Eight-Hour Law. The New York Court of Appeals stated that "principles of general contract law," 297 N.Y. at 225, 78 N.E.2d 480, 79 N.Y.S.2d 217, i.e., federal common law, controlled the issue.

If the New York rule is that federal law controls in a case like *Filardo*, it should *a fortiori* control where, as here, the contract provision does not merely refer to federal law but is mandated *in haec verba*

by federal law. Since New York State courts would follow federal law, federal courts must do so in an action such as this one which is now based on diversity jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

▪ Federal common law, in deciding whether a third-party beneficiary may sue, looks to the same considerations as does the Restatement of Contracts. *See* Restatement (Second) Section 302; *Owens v. Haas*, 601 F.2d 1242, 1250 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Weinberger v. New York Stock Exchange*, 335 F.Supp. 139, 143 (S.D.N.Y.1971). Under the Restatement, the relevant factors are whether "[1] recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... [2 whether] the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) Section 302.

▪ The second part of the test is met here: The promisee, the United States, in mandating that the contractual provision in question be put into the contract, manifested an intention to benefit handicapped employees such as the plaintiff. The first part of the test, however, is not, according to the Court of Appeals in *Davis*. Under this part of the test, one looks to whether allowing the third-party beneficiary to sue is appropriate to effectuate the intention of the parties. Although whether the plaintiff has a private right of action under the statute is conceptually distinct from whether the plaintiff may sue as a third-party beneficiary of the contract mandated by the statute, the same considerations largely determine both issues.

The Second Circuit in *Davis* emphasized the comprehensive administrative scheme provided by Congress to remedy section 503 violations in concluding that it was not "consistent with the underlying purpose of the legislative scheme to infer a private right of action for the handicapped person discriminated against by his employer," 662 F.2d at 126. A private contract action would be as "inconsistent with the underlying purpose of the legislative scheme" and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under the statute. Such an action would therefore not be "appropriate to effectuate the intention of the parties." This result is consistent with that reached by the two other courts that have considered the issue: *Hoopes v. Equifax, Inc.*, 611 F.2d 134 (6th Cir.1979); *Howard v. Uniroyal, Inc.*, 543 F.Supp. 490 (M.D.Ala.1981).

Plaintiff contends that *Owens v. Haas*, 601 F.2d 1242 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979), controls this case and compels an opposite result. In *Owens*, the court held that although the plaintiff, a federal prisoner, did not have a private right of action under a statute which authorized the United States to contract with local authorities for prisoner care, he could sue as a third-party beneficiary of the statutorily authorized contract. In *Owens*, however, the statute merely authorized the United States to make the contract. By contrast, in the instant case, the statute and the regulations under it not only mandated the inclusion of the affirmative action provision, but spelled out *in haec verba* the terms of that provision. Thus, unlike *Owens*, allowing him to sue here under the contract would be allowing him to make an "end-run" around a statute which the Court of Appeals has held did not allow him to sue.

The result is, of course, that plaintiff must forego relief, warmed only by the pleasant thought that public policy is being vindicated. As Judge Fuld noted in *Filardo*, quoting from *City of Phoenix v. Drinkwater*, 46 Ariz. 470, 472, 52 P.2d 1175, 1177 (1935):

> Such [is] ... a Pyrrhic victory for the workman, consoling perhaps to his feelings, but of very little value in giving to him what the law says he has earned and is due him.

*Filardo v. Foley Bros.*, 297 N.Y. 217, 223, 78 N.E.2d 480, 483 (1948). The result, however, follows from the Court of Appeals decision in *Davis*.

### B. *Collective Bargaining Agreement Claim*

■ Plaintiff also alleges that section 503 was incorporated by implication in the collective bargaining agreements between United and his union, the International Association of Machinists and Aerospace Workers. Based on these implied terms, plaintiff claims that the collective bargaining agreement has been violated and that he is entitled to damages as a result.

As required by the Railway Labor Act, plaintiff brought his grievance before an adjustment board established pursuant to collective bargaining agreements. The board declined to hear argument based on section 503, stating that "[t]he authority of the Board of Adjustment derives from the Agreement between the parties. Neither that agreement nor any authority provides the System Board of Adjustment with the power to base its determination in this dispute on acts of Congress."

The Railway Labor Act is intended to provide for the settlement of "all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. It requires that all such disputes between an employee and an air carrier be submitted to an adjustment board to be established pursuant to collective bargaining agreements. 45 U.S.C. § 184. If an employee is not satisfied with the ruling of the Board, he may appeal to federal district court. 45 U.S.C. § 153(q).

Plaintiff has not chosen to appeal under 153(q). Rather, he contends that he was entitled to avoid the procedures established in the Railway Labor Act because of the "futility" of that approach. Plaintiff's claim of futility is designed to come within the rule of *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). That decision related to the necessity of complying with

Railway Labor Act procedures in situations where the employee claimed the union had failed in its duty of fair representation to him. Here, however, there is no claim that the plaintiff's union failed in its duty of fair representation to him. It represented him throughout the grievance procedure and presented his claims, including those under section 503. Rather, what plaintiff terms as "futility" is merely the System Board of Adjustment's rejection of his contention that section 503 is implied in the collective bargaining agreement. Plaintiff claims neither any inherent bias nor breach of duty, either on the part of the Board or the union presenting the claim on his behalf, merely that the Board declined to accept his argument. There is no reason to permit plaintiff to ignore the procedures set up by the Railway Labor Act for review of the Board's determination.

In any event, given the Court of Appeals decision in *Davis*, there is no reason to believe that there is merit in plaintiff's substantive argument. If express incorporation as between his employer and the government does not suffice to permit a private suit, implied incorporation certainly does not.

### CONCLUSION

Plaintiff's claim is dismissed without costs or disbursements.

SO ORDERED.