■ HONORIA CAICEDO, by Her Guardian ad Litem, ROBERTO A. FERREIRA, Appellant, v JANET SANCHEZ, M.D., Respondent. (And a Third-Party Action.) [984 NYS2d 323]—

Order, Supreme Court, Bronx County (Lizbeth Gonzalez, J.), entered August 28, 2012, which granted defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

Plaintiff Honoria Caicedo sustained injury on May 28, 2006 when she fell down the basement stairs on premises owned by defendant Janet Sanchez, M.D., a two-story structure containing a medical office on the first floor and a residential apartment on the second. Dr. Sanchez was not present at the time of the accident. She had permitted her brother, Hugo Zambrano, to stay in her apartment for a few days while she was on vacation. Although he had been instructed not to allow anyone else onto the premises, Hugo invited third-party defendant Maria Torres to stay with him. She arrived, accompanied by her son and daughter and plaintiff, her mother, in the early evening of May 27, 2006. Plaintiff suffers from a variety of ailments, includ-

ing dementia, and an attempt to depose her in October 2009 was abandoned when she could not remember the accident, did not recall having been injured and did not recognize Maria Torres, who had brought her to the deposition.

Dr. Sanchez gave deposition testimony in which she described the layout of the premises. Referring to a photograph of the exterior, which depicts two doors, she identified the right door as the main entrance to her office and the left as the entrance leading to her apartment. Immediately inside the left door is a "procedure room," on the other side of which are another two doors, the right leading to the waiting room and the left to the stairs to the second-floor apartment. At the back of the waiting room is a door to a room used to take blood and to the immediate left is the door to the basement stairs, which is kept locked.

Maria Torres testified that, upon arriving at the premises, she and her family used the left entrance door to go into the procedure room, where a bed had been set up for her mother. She identified the room from a photograph as the procedure room. In any event, she stated that she was present in the room occupied by her mother on the following morning after her mother had eaten breakfast. Ms. Torres stated that her mother rose, took two or three steps, and slipped and fell down the basement stairs. She could not state what, if anything, her mother had slipped on and had not noticed that the floor was slippery. She did not explain how her mother came to fall down stairs separated from the procedure room by a door and the full length of the waiting area.

Plaintiff offered the affidavit of an expert who tested the floor tiles. Using a drag sled to measure the coefficient of friction, the expert obtained a reading of 0.36. He opined that any reading of less than 0.50 is indicative of an unsafe condition.

The duty of an owner of property to maintain his or her premises so that they are reasonably safe (see Kellman v 45 Tiemann Assoc., 87 NY2d 871, 872 [1995]; Basso v Miller, 40 NY2d 233, 241 [1976]) extends to any hazardous condition about which the owner has actual or constructive notice. Except where the landowner created the defective condition, thereby affording actual notice (see Lewis v Metropolitan Transp. Auth., 99 AD2d 246, 249 [1st Dept 1984], affd for reasons stated below 64 NY2d 670 [1984]), it is incumbent upon the injured party to establish that the condition was either known to the owner or had existed for a sufficient period of time to have allowed the owner to discover and correct it (see Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]; Cusack v Peter Luger, Inc., 77 AD3d 785, 786 [2d Dept 2010]).

Here, plaintiff is alleged to have fallen as a result of a slippery floor. Plaintiff was unable to supply any information about the circumstances of the accident. Plaintiff failed to explain how she took two or three steps from a chair in the procedure room and slipped and fell down the basement stairs that were located in the back of the adjacent waiting room. As pointed out by defendant, "Plaintiff would have had to slipped [sic] all the way across the length of the office (waiting room) and made a 180 degree turn before reaching the top of the stairs." Moreover, Maria Torres conceded that she did not know what caused her mother to fall and had not noticed that the floor was slippery. Finally, there is no evidence of any prior injury or complaint about the floor to support the conclusion that Dr. Sanchez should have known about the allegedly hazardous condition (*see e.g. Galler v Prudential Ins. Co. of Am.*, 99 AD2d 720 [1st Dept 1984], *affd* 63 NY2d 637 [1984]; *Silva v American Irving Sav. Bank*, 31 AD2d 620 [1st Dept 1968], *affd* 26 NY2d 727 [1970]). Proof that a floor is "inherently slippery," standing alone, is insufficient to support a cause of action for negligence (*Waiters v Northern Trust Co. of N.Y.*, 29 AD3d 325, 326-327 [1st Dept 2006]; *Kruimer v National Cleaning Contrs.*, 256 AD2d 1 [1st Dept 1998]), and the complaint was properly dismissed. Concur—Tom, J.P., Acosta, Andrias, Freedman and Feinman, JJ.